UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT HEWITT,<br><br>  Plaintiff,<br>v.<br><br>NANCY A. BERRYHILL,<br><br>  Defendant. | CASE NO. C16-6044JLR<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

## I. INTRODUCTION

Plaintiff Scott Hewitt seeks review of the denial of his application for disability insurance benefits. Mr. Hewitt contends that the Administrative Law Judge ("ALJ") erred in evaluating Mr. Hewitt's testimony and the medical evidence in the record. (Op. Br. (Dkt. # 14) at 1.) Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the court AFFIRMS Defendant Commissioner Nancy A. Berryhill's ("the Commissioner") final decision and DISMISSES the case with prejudice.

ORDER - 1

## II. BACKGROUND

On July 22, 2013, Mr. Hewitt protectively filed an application for disability insurance benefits. (Administrative Record ("AR") (Dkt. # 9) at 19.) Mr. Hewitt's application was denied initially and on reconsideration. (*Id.*) After the ALJ conducted hearings on November 14, 2014, and March 17, 2015, the ALJ issued a decision finding Mr. Hewitt not disabled. (*Id.* at 19-37.)

In his decision, the ALJ utilized the five-step disability evaluation process,[1] and the court summarizes the ALJ's findings as follows:

> **Step one**: Mr. Hewitt did not engage in substantial gainful activity during the period from his alleged onset date of June 15, 2004, through his date last insured of March 31, 2009.
>
> **Step two**: Through the date last insured, Mr. Hewitt had the following severe impairments: right shoulder strain; right rotator cuff tear and syndrome, status post-surgical repair; right carpal tunnel syndrome, status post-release; cervical abnormality; regional complex pain syndrome; chronic pain disorder; and major depressive disorder with secondary anxiety.
>
> **Step three**: Through the date last insured, Mr. Hewitt did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment.[2]
>
> **RFC**: Through the date last insured, Mr. Hewitt had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) that did not require lifting or carrying more than 10 pounds occasionally and less than 10 pounds frequently with the right dominant upper extremity, with no limitation with the left; that did not require more than occasional right-side overhead reaching; that did not require more than frequent reaching in other directions; that did not require more than frequent pushing, pulling, handling, fingering, or feeling with the right upper extremity, with no limits on the left upper extremity; that did not require climbing of ladders, ropes, or scaffolds; that did not require exposure

---

[1] 20 C.F.R. § 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

to hazards such as open machinery or unprotected heights; that did not require exposure to heavy vibration; that did not require concentrated exposure to extreme cold; that did not require more than frequent balancing, stooping, crouching, kneeling, or climbing of ramps or stairs; that did not require crawling; that consisted of simple tasks; that consisted of routine tasks; and that did not require more than superficial interaction with others.

**Step four**: Through the date last insured, Mr. Hewitt was unable to perform any past relevant work.

**Step five**: Because jobs existed in significant numbers in the national economy that Mr. Hewitt could have performed through the date last insured, he was not disabled during the relevant period.

(*See id.* at 21-37.) The Appeals Council denied Mr. Hewitt's request for review, making the ALJ's decision the Commissioner's final decision.[3] (*See id.* at 1-7.)

### III. ANALYSIS

Pursuant to 42 U.S.C. § 405(g), the court must set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

**A.   Evaluation of Mr. Hewitt's Testimony**

Mr. Hewitt argues that the ALJ erred in evaluating his subjective complaints regarding the functionality of his right arm. (*See* Op. Br. at 9-10.) The court disagrees.

Questions of credibility are solely the responsibility of the ALJ. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The court may not second-guess these

---

[3] The court omits the rest of the procedural history in this matter because it is not relevant to the outcome.

ORDER - 3

credibility determinations. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (internal citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834.

Mr. Hewitt testified that in 2009 he could do "pretty much nothing" with his right arm due to swelling and pain. (*See* AR at 90.) He stated that he could not lift 10 pounds with his right arm or perform any fine manipulation. (*See id.*)

The ALJ discounted Mr. Hewitt's statements concerning the intensity and limiting effects of his right-arm impairments because, among other reasons, the record showed that Mr. Hewitt responded favorably to treatment during the relevant period. (*See id.* at 28.) An ALJ may discount a claimant's testimony on the basis of medical improvement and favorable response to treatment. *See Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (stating that a favorable response to treatment "undermines [a claimant's] reports regarding the disabling nature" of an impairment). Here, after a full recovery from rotator cuff surgery that resulted in an intact repair, Mr. Hewitt complained of pain and numbness in his right hand. (*See* AR at 542, 546.) Despite normal strength and reflex test results, Mr. Hewitt underwent a carpal tunnel release on his right arm in January

2009. (*See id*. at 535, 624-25.) Mr. Hewitt then experienced improvement in his capabilities and stated that his numbness was gone. (*See id*. at 532-33.) Tests performed months after the date last insured revealed normal neurological findings and full arm strength with the exception of very mildly decreased grip strength on the right side. (*See id*. at 529-30.) Therefore, based on the medical record showing a favorable response to treatment, the ALJ had substantial evidence to find that Mr. Hewitt's right-arm impairment was not as severely limiting during the relevant period as Mr. Hewitt stated at the hearing.

**B.     Evaluation of the Medical Evidence**

Mr. Hewitt also argues that the ALJ erred in evaluating the medical evidence in the record. (*See* Op. Br. at 5-8.) Where the medical evidence in the record is not conclusive, resolving questions of credibility and conflicts in the evidence is solely the responsibility of the ALJ. *See Sample*, 694 F.2d at 642. In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. The ALJ may also draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

//

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester*, 81 F.3d at 830. Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

### 1. Ronald Kendrick, M.D.

Mr. Hewitt argues that the ALJ erred by failing either to fully incorporate or to give a specific and legitimate reason supported by substantial evidence to discount the opinion of medical expert Ronald Kendrick, M.D. (*See* Op. Br. at 5-7.) The court disagrees.

The ALJ gave Dr. Kendrick's opinion significant weight and incorporated it into the RFC. (*See* AR at 23, 31.) Mr. Hewitt argues that the ALJ failed to incorporate Dr. Kendrick's finding that Mr. Hewitt was limited to sedentary work. (*See* Op. Br. at 5-6.) However, the Dr. Kendrick only stated that Mr. Hewitt's arm pain "would limit his ability to use the involuntary upper extremity for anything greater than sedentary work." (*See* AR at 73.) The ALJ immediately clarified, and Dr. Kendrick confirmed, that Dr. Kendrick was referring to limitations in lifting and carrying, not standing or walking. (*See id.*) Accordingly, the ALJ limited Mr. Hewitt to light work with additional, more severe restrictions in lifting and carrying. (*See id.* at 23.) Mr. Hewitt shows no error in the ALJ's evaluation of Dr. Kendrick's opinion.

//

//

## 2. Christopher Penoyar, D.O.

Mr. Hewitt argues that the ALJ erred by failing to give a specific and legitimate reason supported by substantial evidence to discount the opinion of treating physician Christopher Penoyar, D.O. (*See* Op. Br. at 7-8.) The court disagrees.

In March 2015, Dr. Penoyar completed a medical opinion form regarding Mr. Hewitt's functional capacity in March 2009. (*See* AR at 710-11.) In that form, Dr. Penoyar indicated that, among other limitations, Mr. Hewitt could stand or sit no more than two hours in a workday, could occasionally lift and carry no more than 10 pounds, could never twist, stoop, crouch, or climb stairs or ladders, and would need to change positions every 10 minutes and lie down four to six times per workday. (*See id.*) The ALJ gave Dr. Penoyar's opinion no weight because, among other reasons, Dr. Penoyar's treatment notes did not reflect the severity of limitations to which he opined. (*See id.* at 33.)

A discrepancy between a medical opinion source's functional assessment and that source's clinical notes and recorded observations regarding a claimant's capabilities "is a clear and convincing reason for not relying" on the assessment. *Bayliss*, 427 F.3d at 1216; *see also Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989). Here, Dr. Penoyar's clinical notes from the relevant period mention right shoulder, arm, and wrist pain from carpal tunnel syndrome, occasional lymphadenopathy and recurrent sore throat, and other temporary ailments. (*See* AR at 588-95.) Nothing in Dr. Penoyar's clinical notes indicates that Mr. Hewitt was so severely impaired in 2009 that he could not even

//

perform sedentary-level work. (*See id.*) Therefore, the ALJ provided a specific and legitimate reason supported by substantial evidence to discount Dr. Penoyar's opinion.

C.     **The RFC Assessment and Step-Five Finding**

Mr. Hewitt argues that the RFC and step-five finding are not supported by substantial evidence due to the errors alleged above. (*See* Op. Br. at 10.) However, because the court finds that the ALJ did not err in evaluating Mr. Hewitt's testimony or the medical evidence, the RFC and step-five finding are supported by substantial evidence and not in error. *See supra* §§ III.A-B.

## IV.     CONCLUSION

For the foregoing reasons, the court AFFIRMS the Commissioner's final decision and DISMISSES this case with prejudice.

Dated this \_\_12th\_\_ day of June, 2017.

JAMES L. ROBART
United States District Judge